I'm going to spend most of my time, if not all of it, on issue number two. I believe I have the best rational argument on issue number one, but there's just no case law supporting my position. I'd be asking this court to, well, the First Circuit has never addressed it, but I'd be asking this court to really clarify this problem. You're talking about the statutory issue, Mr. Chairman? Yes, sir. Because there actually is a published opinion of the Sixth Circuit, which I read as supporting your position. That's an opinion that I'm unaware of. I'm not going to pretend I'm aware of it. It's a case called the United States v. Wynne, and it was decided in 1993 or 1994. It's a case I missed. You probably ought to take a look at it. I would suggest that that's probably a good idea. In this case, the government had substantial evidence of my client's activities. I mean, he's under 24-7 surveillance at the jail. He wrote numerous letters. He did all kinds of things. And my defense was that he was engaged in a dance, so to speak, with these cooperating witnesses at the jail, and that no one could have believed that this was a serious plot, and therefore, he did not have the intent to commit the crimes charged. And there was this cooperating witness who looked like a nose tackle for the Patriots. He was about 5'8", about 280 pounds or so. That's pretty short for a nose tackle. Not really. They tend to be short and big. And this man was. He was an imposing figure. My client, the jury saw, is a skinny financial advisor who had never been in jail before. And this was, there were problems with my defense. I don't suggest otherwise, but it was a legitimate defense. And the key to the defense was whether or not this cooperating witness was someone that my client was seeking protection from and was playing a game with because it would result in him being protected in the jail setting, a setting that he was unfamiliar with. So you're saying all of that video and audio evidence, none of that matters because that says nothing about what was in his mind as he was going. Everything that is seen and heard is really just a charade, and so to the extent that might seem relevant to a harmless center analysis, it's really not because it has nothing to do with his state of mind. Is that true? That's my point, Your Honor. And you stated it. I would not go quite that far. I would not say it's completely irrelevant because there are portions of it from which you could infer a state of mind. But I suggest that I had a very significant sidestep to the great thrust of the government's evidence in this case. Before you go too far down that line, what's our standard of review on this claim of evidentiary error? As the government says, abuse of discretion. Yeah, but I question whether it is abuse of discretion. There were no grounds stated for your objection at trial. Right, but I suggest the rule says, unless it's plainly obvious, which... So you think that even under Rule of Evidence 103, that you're entitled to abuse of discretion? Yes, Your Honor. Okay. But you never stated the ground of the objection. It's just one of those very simple, I object. So how could the court, is the court entitled to understand fully the ground of your objection? Absolutely. But in context, what other ground could it be than 404? Is he a troublemaker? That's a character trait. We're a character. I don't... Well, it could be that the question is, is he ambiguous because the word troublemaker is subjective or argumentative? I mean, there could be other grounds. Certainly if I were a trial judge, I'd want to hear what the ground was for the objection. Well, I thought it was plainly obvious. The government argues it was reputation evidence that we were entitled to because it directly contradicts the defense that was raised. That's what they argue in their brief. Are you saying the government has weaved any claim through a more favorable standard of review? No. I'm not saying that. But I'm saying that, in effect, by reading their brief, you can see that they're conceding that this was plainly obvious. They say the obvious reason for putting it in is that it goes to rebut the defense that my client feared this person and would be in some sort of dance with him for his own personal safety. If you went on Issue 1, we never get to this issue, correct? Correct. Can we just talk about Issue 1 for a moment so I understand what your argument is? So this statute, the conspiracy to murder and crossing state lines or using interstate commerce is passed at the same time the statute for crimes of violence in aid of racketeering is passed. So it seems to me that what Congress was concerned with when it passed these two pieces of legislation was federalizing these actual plots to do serious bodily injury. Can I just ask you what your view of a plot is? Is that a murder or a plot can be ten murders? My view would be a murder. Okay. So here they could have charged you with two counts. You contend that they didn't because of the way it was written. In other words, they did five either-or counts. Had they done two counts, one for a murder and the other for the other murder? I would say that would be correct. Okay. That's my position. But your position is that since they didn't do it that way, they could at most get one count here. Correct. So I'm trying to take advantage of the way they charged the case. If I'm correct on what the unit of prosecution is, given how they charged it, all five counts would be merged into one and my guy would be looking at ten years, not the possibility of 50 years who got to 20. Can I just say that the government in their briefing mentions a whole range of interactions and communications, presumably each of which could have counted on their theory, but charged just five. Is that right? That's right. Do you know how many total interactions there were? I can't, and maybe the government can answer that. But a number of the interactions could have come to fruition, but the government chose to not let them come to fruition. In other words, if he puts a letter in the jail box for mailing and the government just grabs the letter, it never went into the U.S. mails. So they did that on a number of occasions. They could have let it go to the post office box, then pick it up there. Were there other mailings that did go and aren't charged? I would be guessing. Okay. Mr. Shekhartoff, I want to be sure I understand your answer to Judge Barron's first question. You indicated that if we filed for you on the statutory issue, the other issue makes no difference? No, the other issue does make a difference. Yes, that's what I thought. I just wanted to clarify. So I understand. I thought if you went on the first issue, oh, you still could charge them one count. I got it, I got it, I got it. I just wanted to have that clear that you weren't making some sort of concession. At this point of the day, I wouldn't. But in other words, you can see there is at least one valid count here, even though that's put in the either or. Yes. You're not challenging that count? I'm not. There is one. If you were to view the case the way I do, there is one count of conviction with a 10-year maximum penalty. And you were to reject my argument on character evidence, you would be resentenced on one count and get something no more than 10 years. Mr. Chekhov, the value of character evidence and the rules of evidence is actually, it tends to be pretty confusing and hard to sort out, but I think it's your position that the government's use of the character evidence here, as you characterize it, is simply not truncated by any of the rules of evidence. Is that correct? That's correct. My view is that they're asking the jury to believe that because he's not a troublemaker on prior occasions, he was not a troublemaker on this occasion, and that's the wrong use of character evidence. You can't use it to show that he acted in conformity with his prior reputation. Before you sit down, one last question just on the harmless error point. If I understood your answer to Judge Lopez, it was that there were things you see on the video that might suggest that it was harmless. But we're supposed to imagine that actually that was a charade. And I'm just wondering how we're supposed to perform that kind of harmless error. It would seem like it would certainly be reasonable to conclude it wasn't a charade. Correct. So what do we do in that regard? So I think the jury concluded it wasn't a charade because that defense was right out there as plainly put as I could make it. So I don't follow the harmless error argument. So my harmless error argument would be that if you have something that we all conceded would unfairly undermine the defense that it was all a charade, then it seems to me you'd have to view the case as if it was all a charade. In other words, did this hurt the defense? But you're one step removed. That's what I'm not following. In other words, whether or not this person is dangerous or not doesn't necessarily tell one whether the reason your client did the things he did was for the reasons he said he did it. It's not like we have evidence here that goes directly to his mental state. It's indirectly towards it. And so I just don't quite see how on harmless error, what authority there is for us, just discounting what we see with our own eyes and just putting ourselves in a position where it must be the case that because this guy was dangerous, we have to assume all of that was a charade. So just if you can help me with that. Okay. So I'm not sure I can, but this is the way I view it. If there's a defense that makes all the other evidence in the case irrelevant, but at least 99% irrelevant, and you do something that undermines that defense and that's completely unfair and it completely undermines that defense, it seems to me that's harmful error because the theory of the defense is the rest of it's irrelevant. The jury might have thought about the entire case differently. I got it. Okay. Thank you. Thank you. May it please the court, Rachel Hemani for the United States. Could we ask counsel that you start with the statutory interpretation point? Sure. The statutory language of the murder for hire statute is unambiguous. It punishes as a unit of prosecution each act of interstate travel or each use of a facility of interstate commerce with the intent that murder for hire be committed. And the legislative history also makes clear that Congress intended to punish precisely what the statute says it punishes. The Sixth Circuit has squarely addressed this issue and has held that the evil prescribed by the statute was, in fact, each use of a facility of interstate commerce and each act of interstate travel. You must be reading a different Sixth Circuit case than I am. You know, I mentioned United States against Wynn, which you characterize in your brief erroneously, in my view, as a moving case under sentencing law. I don't think that's a fair characterization. United States versus Wynn is another Sixth Circuit case which was decided... Which is published in Presidential, unlike the Sixth Circuit case that you've cited. The whole thing in United States versus Wynn is that separate phone calls that relate to one plot to murder one individual constitute only one statutory violation. This court in Vasco indirectly sort of dealt with Wynn. In that case... Just hold on one second. I think the clock is not running. Oh, I'm sorry. Okay, thank you. This court in Vasco addressed Wynn in upholding a sentence of 20 years on five counts of murder for hire. Basically saying that in Vasco there were two different plots to kill two different people and therefore a 20 year sentence was appropriate. Our argument is that Ng, the later Sixth Circuit case, correctly analyzes this issue. How can a circuit change its view in an unpublished opinion when it has a published opinion that under its rules has precedential value? I think the way that Wynn, the analysis in Wynn was such that the court was sort of analogizing the due process issue to cases that relate to grouping of counts... It said that the logic of those cases informed its analysis of the statute. That's true. Courts do that all the time. They reason by analogy. That doesn't change the fact that Wynn is a statutory interpretation case. I'm puzzled at the notion that you place such heavy reliance on an unpublished Sixth Circuit opinion when the Sixth Circuit has a precedential opinion going the other way and favoring the defendant. I think the analysis in the unpublished opinion is correct. And if you look back again at first principles, what's the statutory language, what's the legislative history? You keep saying the statutory language. You use the word each every time you describe the statute. But I don't see that word in the statute. Your Honor is correct. That word is not in the statute. That would be a very helpful word to your position if it was in the statute. But since it's not, it just seems to raise the ambiguity about whether the statute is best run to say each act or whether it's simply setting forth a predicate condition that there had been a use of interstate commerce facilities or trial in interstate commerce. So the only argument I see you having is that textually that language is identical to the language of the Travel Act, which has been construed to be each. But here's what I don't get. The Travel Act does not criminalize what you contend would be criminalized here, which is simply using a facility of interstate commerce with a given intent. It only criminalizes that when there's then a follow-on act in furtherance of the crime. And there's no such additional language in this provision. So why should we say that Congress must have meant this language to result in something that would be somewhat surprising? Because how would you delimit the circumstances? You could charge a thousand offenses. Every time I text, they text back. I call someone. The call drops. I call again. I've committed two crimes. Is that your theory? Yes, that is our theory. Why would Congress want to do that? The legislative history basically says that the act is the crime is completed after the facility of interstate commerce has been used. But that just restates the problem. Why would Congress want to do that? And that why is particularly acute in this case where you've got a government cooperator in a position to manipulate the number of uses of the facilities of interstate commerce and could stage this crime so that there are 500 or 1,000 uses and, therefore, 500 or 1,000 counts. Why would Congress want to set the stage for this? It's similar, I would suggest, to the mail fraud and wire fraud. It's not, you know, the statutory language itself. The mail fraud and wire fraud don't allow you to do each, not every single time you use a wire with an intent to commit an unlawful activity, you're not criminalized. There's no statute that I can find anywhere that makes it a crime to use a facility of interstate commerce, not even knowing that you use it, but simply to have used it with an unlawful intent. This would be the only statute that I can find that you identify that would do that. Now, with all the problems that creates in terms of manipulation or divvying it up, I just don't see why we would be bound to say that we have to read it that way. Counsel, why, relatedly, why would it not serve the congressional purpose to criminalize the use of an interstate facility to advance a plot for hire if, given the use we have here, it is charged as a crime? I mean, in other words, why doesn't Mr. Sheketau's view of what the statute is all about adequately serve the congressional purpose? I don't know why you have to meet that purpose. You have to be able to charge a separate crime every time instrumentality of commerce is used. Why is that necessary to fulfill the congressional purpose? In this case, you've got a number of telephone calls and mailings over a period of four months. They all advance the same plot. It's a plot to kill two different individuals. And I would also point out that initially the plot was to kill the defendant's wife and the trooper, and it evolved over time. So I'm not sure I agree with the characterization that there's even a single plot here. He's not saying there's a single plot. He's saying there's two. There's at least two. Maybe there's three. If there's a third person he's trying to murder, there would be three. If he had two distinct plots to murder one person, there could be two. But what you're saying is even when there is a plot to commit only one murder for hire, every time he gets on the phone and the phone call drops and he calls back, he's committed another crime. And it's just puzzling why Congress would want to do that. You dismiss the characterization of this interstate element as a jurisdictional hook. Sure, it's still an element of the offense. But in terms of understanding what Congress was primarily concerned about, isn't it relevant that this particular element was necessary if Congress wanted to criminalize what otherwise might be considered conduct that the state should be concerned about? Isn't that important in understanding what Congress was about with this statute? What Congress said that the purpose of the statute was, is it says that it punishes the travel in interstate or foreign commerce or the use of facilities of interstate or foreign commerce or the mails as consideration for the receipt of anything of pecuniary value with the intent to murder. Doesn't his view of the statute fit perfectly with that? It in fact punishes you for using interstate commerce for a plot to hire? The Senate report also says that the crime is complete as soon as the call is made. I view that as supporting that each separate... But why does that? As soon as the call is made, so long as the government can prove that the call was made in furtherance of a plot to murder. So that doesn't have anything to say about whether each use in connection with the same plot to murder, a single individual could be charged in hundreds of different counts. That is the government's interpretation of the statute. That we can charge each use of a facility of interstate commerce in each act of travel and that it's consistent with the interpretation under the Travel Act.